**James Vernon VASSAR, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**Nos. A–12491, A–12504.**

Criminal Court of Appeals of Oklahoma.

June 11, 1958.

Rehearing Denied July 30, 1958.

Lloyd G. Larkin, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

James Vernon Vassar was charged in the district court of Tulsa County with the crime of second degree burglary, after former conviction of a felony, was tried before a jury and convicted, but the jury being unable to agree upon the punishment, left that to the court. The court assessed the penalty at confinement in the State Penitentiary for a term of twenty-five years, and a fine of $200. The case is here on appeal, and the complete record has been furnished at the expense of the county.

For reversal defendant sets out four specifications of error. Numbers two and three will be treated together prior to the other specifications, and being:

"2. That the court erred in overruling defendant's motion to strike all that portion of the information of the State of Oklahoma alleging a former conviction.

"3. That the court erred in overruling defendant's motion to suppress the evidence pertaining to the alleged former conviction."

The charging part of the information reads:

" * * * that James Vernon Vassar on the 7th day of October, A.D. 1956, in Tulsa County, State of Oklahoma, and within the jurisdiction of this court, did unlawfully, wilfully, burglariously and feloniously, in the nighttime, break and enter into a certain grocery store, Perry's Food Market, located at 71 North Lewis in the city of Tulsa, Oklahoma, and being then and there occupied by and in the possession of Perry Isom, by breaking open the outer doors and windows and entering the said grocery store with the felonious and burglarious intent then and there upon the part of the said defendant to steal therein by then and there taking, stealing and carrying away, without the consent of the owner thereof, certain personal property of value in said building kept and contained; that said defendant, heretofore, to-wit: on the 6th day of April, 1948, was convicted of the crime of forging United States Government obligations in the United States Federal Court for the Northern District, State of Oklahoma, and sentenced to serve a term of three years in the United States Federal reformatory at El Reno, Oklahoma, by the Honorable Royce H. Savage, Judge of the United States Federal Court, case number being 11,459, contrary to the form of the statutes in such cases made and provided, * * *."

■ The record shows that to prove the prior conviction alleged in the information the State produced as a witness M. M. Ewing, who testified that his occupation at the time of trial was chief deputy clerk of the United States District Court for the Northern District of Oklahoma, Tulsa, and had been for twenty-seven years; and that among his duties he had charge of the records of criminal cases in the Federal Court for that district, including case No. 11,459. He was handed an information in the case of United States of America versus James Vassar, which he identified, and this information was received in evidence as State's Exhibit 4.

Witness was then handed an instrument marked for purpose of identification State's Exhibit 5, and he testified that such instrument was the original judgment and commitment filed in the case wherein James Vassar was defendant. Witness further testified that the records showed that there was no appeal from the judgment entered. The exhibit was received in evidence. These two exhibits showed the conviction of James Vassar in Federal Court, as alleged in the information.

Carl Davis next testified for the State. He said that he was working for the Federal Government, assigned to postal inspection as investigative aid, and had been doing such work for ten years. Witness testified that he was acquainted with James Vernon Vassar, and pointed out the defendant in the within case. He requested defendant to stand and remove his glasses.

Witness said that the defendant before him was one and the same person who was convicted in the United States Court for the Northern District of Oklahoma on April 6, 1948 of the crime of forging a United States obligation in case 11,459.

On cross-examination witness testified in part:

"Q. Were you in court in the Northern District Court of Oklahoma at any time while the plea of guilty was entered or while a conviction was rendered against James Vernon Vassar, yourself, personally? A. Yes, sir.

"Q. Where was this? A. It was in the United States District Court here in Tulsa.

"Q. And at what time? A. It was the early part of 1948. I don't recall the exact date and month and date, it was the early part of '48, I remember that.

"Q. And of your own knowledge, you are testifying that the information and the charge that you are referring to is one and the same thing? A. Yes, sir."

The record further shows that defendant testified in his own defense and admitted on cross-examination that he had been convicted of forging a United States obligation, and that such conviction was the one referred to in the present charge.

Counsel asserts that there was not sufficient proof as to the identity of the defendant in the present case, James Vernon Vassar, as being the James Vassar who was convicted in case No. 11,459 in the United States District Court for the Northern District of Oklahoma on April 6, 1948. However, in view of the evidence recited, we can not agree with such contention. Witness Davis positively identified the defendant. Therefore, the case of Ward v. State, 8 Okl.Cr. 525, 128 P. 1105, cited by the defendant, is not applicable.

It is further argued that the former offense alleged in the information in this case could not constitute the basis of a second offense prosecution under the statutes of Oklahoma. We find that this same argument was made in the case of Newton v. State, 56 Okl.Cr. 391, 40 P.2d 688. There Newton had previously been convicted in the United States Court on a charge of robbery of the United States mails. This court held:

"A prior conviction in a United States court of a crime which, if committed within this state, would be punishable by imprisonment is a sufficient basis for a prosecution of a subsequent charge, as a second offense, under section 1820, Okl.Stat. [21 O.S.A.1951 § 54] which imposes heavier penalties for persons who have prior thereto been convicted of such a crime in any other state, government, or country."

The above case may be referred to for the reasons supporting the holdings.

As we have seen, the crime charged in the within case forming the basis for the conviction of the defendant as a second offender, was forgery; that is, forging United States Government obligations. By 21 O.S.1951 § 1577, it is provided:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

We conclude that the crime previously charged in the Federal Court was also a crime under State law, a felony, and is sufficient basis for the prosecution of subsequent

charge, as second offense, under the habitual criminal statute (21 O.S.1951 § 54).

◼ The remaining propositions, and being that the verdict is not sustained by sufficient evidence and is contrary to law, and that the judgment of the court, sentencing the defendant to the State Penitentiary for twenty-five years is excessive, must fail in view of the facts disclosed by the record.

Eight witnesses testified for the State and we do not deem it necessary to detail the evidence in view of the certainty of the evidence, and the admissions of the defendant. Suffice to say three members of the Tulsa police department saw broken glass on the sidewalk apparently out of the front door of Perry's Food Market, a grocery store located in the city of Tulsa, and they stopped to investigate. Two of the officers upon entering the store saw what they thought were three men running to the rear of the store; one of the officers caught one of the men who had slipped and fallen. This person was the defendant. The second officer shot at another man. The back door had been pried ajar, and a third officer who had gone to the rear of the grocery store shot and killed a man who ran out of the back door and in the direction of the officer. This man was James T. Robinson. The third burglar, if there was one, was not apprehended.

Defendant admitted to certain of the officers that he and Robinson had broken into the store with the intention of hauling away the safe.

When defendant testified his defense was that his deceased companion in the robbery had forced him by threats on his life with a gun to aid in the robbery, though such testimony was contrary to what officer Harry L. Stege, Captain of Detectives in the Tulsa Police Department testified defendant told him. As to the conversation, officer Stege said:

"The conversation was very brief. I had Mr. Vassar come up to the office, brought up there, and I said, 'Jim, it looks like you and Bud are in some trouble again', and he said, 'Yes'. I said, 'What are you going to do?' He said, 'Bud and I broke into the place and were going to carry the safe out.' Then I asked him who was with him, and at that point he said, 'I don't think —' he didn't want to say anything more until he talked to his lawyer. I told him that was perfectly all right, 'You can talk to your lawyer at any time.' I told him we were going to file a burglary charge against him. That was the substance of the conversation."

As to the defense, the court gave a proper instruction which would have permitted the jury to find the defendant not guilty if they had believed his acts were done under such threats or menaces as to show that the life of defendant was in danger, or that there was a reasonable cause to believe, and actual belief, that there was such danger,—the danger to have been a present danger, and not one of future violence, but of present and immediate violence at time of the commission of the forbidden act.

The defendant in testifying not only admitted the prior conviction charged in the information, but various other convictions.

◼ By the terms of 21 O.S.1951 § 1436 subd. 2, burglary in the second degree is punishable by imprisonment in the penitentiary not exceeding seven years, and not less than two years. By 21 O.S.1951 § 51, subd. 1, the habitual criminal act, defendant was subject to imprisonment for not less than ten years, but as much as life. We cannot say, in view of the record, that the assessment of twenty-five years by the court was excessive. There is nothing in the record to justify this court in modifying the sentence imposed.

Judgment affirmed.

BRETT, P. J., and NIX, J., concur.